IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MITCHELL RAY CANADA,<br>Plaintiff, | § <br> § <br> § | |
| v. | § <br> § | CIVIL ACTION NO. 4:22-CV-867-BJ |
| COMMISSIONER, SOCIAL<br>SECURITY ADMINISTRATION,<br>Defendant. | § <br> § <br> § <br> § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mitchell Ray Canada ("Canada") seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Because the parties have consented to proceed before a magistrate judge, the undersigned has full authority under 28 U.S.C. § 636(c) to consider this appeal, including issuing a final judgment. For reasons stated herein, the decision of the Administrative Law Judge ("ALJ") is **AFFIRMED**.

## I.       STATEMENT OF THE CASE

Canada filed this action pursuant to Section 205(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "SSA"), 42 U.S.C. §§ 416(i), 423, and 1382(a)(3). (Plaintiff's Brief ("Pl.'s Br.") at 1.) On January 24, 2020, Canada filed an application for DIB and SSI, alleging that his disability began on March 10, 2014. (Transcript ("Tr.") 248-63.) Canada's application was initially denied on December 1, 2020, and upon reconsideration on March 19, 2021. (Tr. 153-56, 158-61, 164-68.) A hearing with an

1

Administrative Law Judge ("ALJ") was held on November 9, 2021. (Tr. 48.) The ALJ subsequently reviewed the facts of Canada's case and issued a decision denying Canada's claims on December 7, 2021. (Tr. 20-42.) In his decision, the ALJ found that Canada had not been under a disability, as defined in the SSA, from March 10, 2014, through the date of the decision. (Tr. 42.) On July 29, 2022, the Appeals Council denied Canada's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 7-9.) Canada then filed this civil action under 42 U.S.C. § 405(g), requesting judicial review of the ALJ's decision.

## II.     STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (DIB); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d

1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e), 416.920(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir. 1999).  At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla, but less than a preponderance.  *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the

evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.[1]

## III.   ISSUE

In his brief, Canada presents the following issue: Whether the ALJ failed to support his RFC determination with substantial evidence by failing to properly evaluate the opinion evidence. (Pl.'s Br. at 1.)

## IV.   ALJ DECISION

In his December 7, 2021, decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 20-42.) The ALJ first noted that Canada met the insured status requirements of the SSA through September 30, 2014. (Tr. 25-26.) The ALJ then stated that Canada had engaged in substantial gainful activity from January 1, 2016, through March 31, 2020, after the alleged onset date of disability, but added that, "[g]iven the short duration of both these jobs and the limited earnings information available, I find that this work activity does not constitute substantial gainful activity." (Tr. 26-27.) The ALJ then noted that there had been a continuous twelve-month period during which the claimant did not engage in substantial gainful activity. (Tr. 27.) At Step Two, the ALJ found that Canada had the following severe impairments: degenerative disc disease of the lumbar spine, neurocognitive disorder, major depressive disorder, and generalized anxiety disorder. (Tr. 27.) At Step Three, the ALJ found that Canada did not have an impairment or combination of impairments that met or medically equaled any section in the Listing. (Tr. 28.)

As to Canada's RFC, the ALJ stated the following:

After careful consideration of the entire record, I find that the claimant has the

---

[1] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

4

> residual functional capacity to perform medium work as defined in 20 CFR
> 404.1567(c) and 416.967(c) except the claimant can: frequently handle, finger, and
> feel with bilateral upper extremities; frequently climb, balance, stoop, kneel,
> crouch, and crawl; and can understand, remember, and carry out simple tasks and
> instructions.

(Tr. 30 (emphasis omitted)). Finally, the ALJ opined, "considering the claimant's age, education,

work experience, and residual functional capacity, there are jobs that exist in significant numbers

in the national economy that claimant can perform." (Tr. 41.) Consequently, the ALJ found that

Canada was not disabled. (Tr. 42.)

## V.   DISCUSSION

Canada argues that the ALJ failed to properly evaluate the opinion evidence in making his

RFC determination. (Pl.'s Br. at 1.) Specifically, Canada takes issue with the ALJ's decision

finding the opinions of Peggy Auguste, PsyD ("Dr. Auguste"), and Helene Alphonso, DO ("Dr.

Alphonso") unpersuasive. (Pl.'s Br. at 9.) The bulk of Canada's argument focuses on Dr.

Alphonso's examination, about which Canada states:

> In the present case, Dr. Alphonso opined Plaintiff had marked or greater
> limitations in all four categories of mental functioning, as well as significant
> limitations off-task time and absences. The ALJ found this opinion unpersuasive,
> noting the opinion was not well explained and conflicted with Plaintiff's work
> history as a driver. The ALJ also found the opinion inconsistent with consultative
> examination reporting and unsupported by Dr. Alphonso's own treatment notes.
> However, the ALJ's reasoning lacks explanation and relies on cherry-picked
> evidence. These errors warrant remand.

(Pl.'s Br. at 9.)

Canada asserts that the ALJ cherry-picked evidence by ignoring evidence that suggested

that Canada was disabled and selecting only the evidence that supported the ALJ's position. (Pl.'s

Br. at 10.) According to Canada, his overall treatment history shows an extensive history of

"regularly significant mental status exam findings," including "moderate to severe depression,

nervousness, . . . anxiety, flat to restricted affect, slow speech with prolonged latency, poor

5

concentration, and motor retardation." (Pl.'s Br. at 11.) Canada points to the ALJ's treatment of Dr. Auguste's medical opinion as an example of the ALJ discounting evidence unfavorable to his position. *Id.* Canada asserts that the ALJ discounted Dr. Auguste's opinion that "Plaintiff had significant impairments in his ability to do work activities such as sit, stand, move about, lift, carry, and handle objects due to memory issues, tremors, and chronic back pain," without giving a sufficient explanation as to why. (Plaintiff's Reply at 3.)

Furthermore, Canada argues that the ALJ failed to adequately explain his finding that Canada's work history and the findings of other medical sources and examiners were inconsistent with Dr. Alphonso's opinion. (Pl.'s Br. at 12; Tr. 39.) Specifically, Canada states:

> [T]he VE identified Plaintiff's past work as a driver as light work and testified that Plaintiff would be unable to perform that work with the ALJ's proposed RFC. AR 67-68. The ALJ seemingly agreed with this conclusion as he too found Plaintiff was incapable of performing his past relevant work. AR 40. Therefore, it is bizarre that the ALJ would find Plaintiff's past work as a driver in conflict with Dr. Alphonso's opinion, as both would appear to agree that Plaintiff would be incapable of continuing to perform that job. All the ALJ has done is provide a conclusory statement that appears to contradict his own findings. While the ALJ is free to accept or reject opinions, the ALJ . . . must explain his decision.

(Pl.'s Br. at 12.)

In response, the Commissioner asserts that the ALJ considered the opinions of Dr. Auguste and Dr. Alphonso but found inconsistencies between these opinions and evidence in the record. (Defendant's Brief ("Def.'s Br.") at 6.) Regarding Dr. Alphonso's opinion, the Commissioner argues that, although Dr. Alphonso "indicated the Plaintiff 'gets very anxious in new situations and avoids ADL's like shopping that require interacting with others' and 'will get anxious and forget easily,' the ALJ noted that Plaintiff had engaged in daily routine activities . . . including driving cars, parking cars, and cleaning offices." (Def.'s Br. at 8.) The Commissioner further argues that the ALJ supported his conclusion that "[t]he longitudinal treatment history has

remained disproportionate to the nature and severity of dysfunction reported," with the fact that Canada's treatment was limited to medication management and that Canada had declined counseling and treatment referrals. (Def.'s Br. at 9.) Finally, with regard to Dr. Auguste's opinion that Canada had a significant impairment in his ability to do certain physical work activities, the Commissioner points out that the ALJ in fact did consider this opinion and that the ALJ found it unpersuasive because it assessed limitations outside the area of expertise of a psychological examiner and was inconsistent with mental status findings reflected in the remainder of the record. (Def.'s Br. at 9-10.)

An RFC is what an individual can still do despite his limitations.[2]  Social Security Regulation ("SSR") 96-8p, 1996 WL 374184, at *2 (SSA July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  An RFC is not the least an individual can do but the most.  *Id.*  The RFC is a function-by-function assessment, with both exertional and nonexertional[3] factors to be considered, and it is based upon all of the relevant evidence in the case record.  *Id.* at 3–6.  The responsibility for determining a claimant's RFC lies with the ALJ.  *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform sustained

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling."  SSR 96-8p, 1996 WL 374184, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities.  *Id.*  Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.  *Id.* at *6.

work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *1 (SSA Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

The ALJ's treatment of medical opinions is governed by the revised rules in 20 C.F.R. § 404.1520c, which apply to claims that were filed after March 27, 2017, such as the claims in the present case. *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. 404.1520c(a)); *Governor v. Comm'r of Soc. Sec.*, No. 20-54-BAJ-EWD, 2021 WL 1151580, at *6

(M.D. La. Mar. 2, 2021). Pursuant to 20 C.F.R. § 404.1520c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." Additionally, "[w]hen a medical source provides one or more medical opinions[4] or prior administrative medical findings, prior administrative findings are findings other than the ultimate determination about whether the claimant is disabled, about a medical issue made by the Commissioner's federal and state agency medical and psychological consultants at a prior level of review of the claimant's current claim based on their review of the evidence in the case record. Such findings could be on issues including: (i) the existence and severity of the claimant's impairment(s); (ii) the existence and severity of the claimant's symptoms; (iii) statements about whether the claimant's impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) the claimant's RFC; (v) whether the claimant's impairment(s) meets the duration requirement; and (vi) how failure to follow prescribed treatment and drug addiction and alcoholism relate to the claimant's claim. *See* 20 C.F.R. § 404.1413(a)(5). [The ALJ] will consider those medical opinions or prior administrative findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of" section 404.1520c(a), as appropriate." 20 C.F.R. § 404.1520c(a) (footnotes added). The ALJ is not

---

[4] Medical opinions are statements from a medical source about what the claimant can still do despite her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in certain abilities. These may include claimant's ability to: (i) perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) perform other demands of work, such as seeing, hearing, or using other senses; and, (iv) adapt to environmental conditions, such as temperature extremes or fumes. *See* 20 C.F.R. § 404.1513(a)(2).

required to articulate how he considered each medical opinion or prior administrative medical findings from one medical source individually.  20 C.F.R. § 404.1520c(b)(1).

"The most important factors [the ALJ] consider[s] when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)."  20 C.F.R. § 404.1520c(a).  "The ALJ must explain the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in his determination, and he may, but is not required to, explain how he considered the (c)(3) [through] (c)(5) factors, *i.e.*, relationship with the claimant, specialization, and 'other factors.'"  *Governor*, 2021 WL 1151580, at *7.

In this case, the ALJ found, as stated above, that Canada has the RFC to "frequently handle, finger, and feel with bilateral upper extremities; frequently climb, balance, stoop, kneel, crouch, and crawl; and can understand, remember, and carry out simple tasks and instructions."  (Tr. 30 (emphasis omitted)).  In making the RFC determination, the ALJ considered, *inter alia*, the medical evidence in the record and the opinions of Peggy Auguste, PsyD, and Helene Alphonso, DO.  Relying on this evidence, the ALJ found that "the level of activity and the limited nature of clinical findings remains unsupportive of the severity alleged through the lengthy relevant period since the alleged onset date."  (Tr. 37.)  The ALJ reasoned as follows:

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence including radiological imaging, laboratory testing results, diagnostic and clinical findings, and other evidence provided in treatment and examination records. The above residual functional capacity assessment is also supported by medical and psychological opinion evidence, without contradictory treating medical source opinion evidence that is supported by the objective medical evidence.  Other factors supporting the residual functional capacity assessment includes the claimant's longitudinal treatment history and work history.

(Tr. 40.)

In providing reasoning for his determination of Canada's RFC, the ALJ first addressed Dr.

Auguste's findings, noting that:

> [Dr. Auguste] indicated that based on the evidence obtained, the claimant was demonstrating significant impairment in his ability to do work activities such as sit, stand, move about, lift, carry, and handle objects due to memory issues, tremors, and chronic back pain. He was assessed as demonstrating impairment in his ability to reason and to make occupational, personal, and social adjustments, and demonstrates concentration problems and impaired memory (4F/9-10). However, the assessment was not persuasive, including numerous assessed limitations outside the area of expertise of the psychological examiner. The issues identified in physical functioning did not define and identify a specific functional assessment but did include assessed areas of physical deficits that were not supported by the examination findings apart from the subjective statements provided. The nature of mental deficits identified were also less consistent with the nature of mental status findings apart from the subjectively reported degree of issues present, and also remains less consistent with the mental status findings reflected in the remainder of the record. The issues with concentration cited was inconsistent with testing that indicated adequate concentration and attention during testing, and findings that supported good judgment, inconsistent with the adaptive issues assessed (4F/1-9). The functional assessments of physical and mental areas affected by Dr. Auguste were evaluated in the context of mental status findings from the consultative examination and in the course of treatment from other sources as well as other evidence of functioning including work activity and activities of daily living and were not determined to be persuasive.

(Tr. 38-39.) Next, the ALJ summarized Dr. Alphonso's opinion, stating:

> Dr. Alphonso assessed the claimant would be markedly limited in the ability to understand, remember, or apply information, in the ability to interact with others, and in the ability to concentrate, persist, or maintain pace, with extremely limited ability to adapt or manage oneself (7F/4, 8F/7). Short term memory was assessed as markedly limited while long-term memory was moderately limited, while remembering locations and work-like procedures were markedly limited, understanding and carrying out very short and simple instructions was moderately limited, and understanding and carrying out detailed but uninvolved instructions was extremely limited. The claimant was assessed as able to maintain attention and concentration for less than 30 minutes, would not be able to maintain regular attendance and be punctual with customary tolerances, and would require enhanced supervision. He would sometimes be able to work appropriately with the public and coworkers, but not with supervisors and would need positive reinforcement from supervisors (7F/5, 8F/8). However, while able to maintain socially appropriate behavior, would not be able to respond appropriately to changes in the work setting, and would be off task for more than 25% of the workday and estimated four or more days per month likely to be absent (7F/6, 8F/9).

Finally, the ALJ then explained why he was not persuaded by Dr. Alphonso's findings:

> However, the nature and severity of dysfunction was not well explained with
> limited clinical findings cited in support, with the degree and range of deficits that
> was inconsistent with the acknowledged years of work activity as a driver.  The
> degree of deficits in attention and concentration, memory, cognitive function,
> interactive and adaptive capacity were also inconsistent with the nature of testing
> results and mental status findings provided in consultative examination reporting
> (4F/3-9).  The severity of dysfunction was also inconsistent with treatment notes
> from Dr. Alphonso that supported responsiveness to mental health treatment
> identified in the functional assessment (1F/60-62, 71-72, 76, 121, 132-133, 169,
> 170-173, 6F/17-24, 189-194).  The severity and range of dysfunction assessed
> dating back to 2012 by Dr. Alphonso remains inconsistent with corresponding
> examination and treatment notes, including the frequency of absences with marked
> to extreme deficits present which were unsupported by the documented frequency
> of follow-up and clinical findings that did not support the severity or progression
> of issues that would support the frequency of absences assessed, and was not
> determined to be persuasive as compared with the remainder of the record.

(Tr. 39-40.)

As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record.  If substantial evidence in the record supports the ALJ's determination of a claimant's RFC, there is no reversible error.  *See Gutierrez v. Barnhart*, 2005 WL1994289, at *7 (5th Cir. 2005).  At issue, here, is the ALJ's treatment of the medical opinions of Dr. Auguste and Dr. Alphonso.

As previously stated, the ALJ, in making his determination, found Dr. Auguste's opinion unpersuasive, in part, because the opinion included "numerous assessed limitations outside the area of expertise of the psychological examiner."  (Tr. 38.)  Furthermore, the ALJ found Dr. Auguste's opinion "assessed areas of physical deficits that were not supported by the examination findings apart from the subjective statements provided."  (Tr. 38.)  Finally, the ALJ noted that "[t]he nature of mental deficits identified were also less consistent with the nature of mental status findings apart from the subjectively reported degree of issues present, and also remains less

consistent with the mental status findings reflected in the remainder of the record." (Tr. 38-39.)

Regarding Dr. Alphonso's opinion, the ALJ found the opinion unpersuasive because it "was not well explained" and included only "limited clinical findings cited in support." (Tr. 39.) Moreover, the ALJ found that "the degree and range of deficits . . . was inconsistent with the acknowledged years of work activity as a driver." (Tr. 39.) In his assessment of the opinions of Dr. Auguste and Dr. Alphonso, the ALJ explained in detail why he found their opinions to be unpersuasive. (Tr. 38-39.) The reasoning provided by the ALJ specifically reflects the supportability and consistency factors, as the ALJ noted that the RFC assessments were not consistent, as a whole, with the treatment records and objective evidence. (Tr. 38-39.)

Based on the foregoing, the Court finds that the ALJ properly considered the evidence as a whole. Utilizing not only parts of Dr. Auguste's and Dr. Alphonso's opinions, but also the other medical evidence of record, the ALJ appropriately determined Canada's RFC. The ALJ discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See, e.g., Muse*, 925 F.2d at 790. Because there is substantial evidence in the record that supports the ALJ's RFC determination, remand is not required.

Moreover, even assuming, without deciding, that the ALJ was required to specifically articulate his evaluation of the medical opinions using all five factors set forth in 20 C.F.R. 404.1530c(c)(3), the Court finds that the ALJ did so.

## CONCLUSION

Based on the foregoing, the ALJ's decision is **AFFIRMED** in all respects.

SIGNED September 18, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

14